MARK T. MONSON, P.A.
MOSMAN LAW OFFICES
803 S. Jefferson, Suite 4
P.O. Box 8456
Moscow, ID 83843
(208) 882-0588
(208) 882-0589 Facsimile
Idaho State Bar No. 6165
Washington State Bar No. 30497

Attorney for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:15-cr-281-EJL |
| Plaintiff, | |
| | **SENTENCING MEMORANDUM** |
| v. | |
| PAUL JENS SUGGS, | |
| Defendant. | |

The Defendant, Paul Jens Suggs, appearing by the undersigned defense counsel, respectfully submits his Sentencing Memorandum.

### LEGAL ANALYSIS

Subsequent to *Booker v. United States*, 543 U.S. 220 (2005), the District Court's sentencing decision is to be guided by the criteria set out in 18 U.S.C. §3553. 18 U.S.C §3553(a) directs the court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes. . ." of the statute. The guiding factor in determining whether a sentence is appropriate is reasonableness. *See Booker*, 543 U.S. 220 at 262. The *Booker*

**SENTENCING MEMORANDUM**
**Page 1 of 11**

Court reiterated a basic principal of sentencing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." *Id.* at 251.

In *United States v. Zavala,* the Court held that the district court must make sure that it does not give undue weight to the advisory guideline range, because in doing so it would "fail to embrace the discretion that it has, which is to reach the right answer to the sentencing decision rather than a merely plausible answer." 443 F.3d, 1165, 1170 (9th Cir. 2006).

The *Zavala* decision clarifies that the advisory guideline calculations are not to be accorded greater weight than the 18 U.S.C. § 3553 factors. *See Zavala*, 43 F.3d at 1171. The following are the statutory and guideline factors and their application to Mr. Suggs' case.

## I.  18 U.S.C. §3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

### a.  Defendant's Criminal History

Paul Jens Suggs has no adult criminal convictions. (PSIR ¶ 41). As noted in the Presentence Report, there are four juvenile cases in Latah County that have been expunged. (PSIR ¶ 40).

In *United States v. Collington*, the court varied downward from the guideline range of 188 to 235 months to give the defendant a sentence of 120 months. *See United States v. Collington,* 461 F.3d 805, 808 (6th Cir. 2006). The district court explained at the sentencing hearing that such a variance was justified in this case because of a number of factors which made Collington's case an outlier and which the guidelines did not account for. *See id.* The

**SENTENCING MEMORANDUM**
**Page 2 of 11**

district court found that, despite Collington's criminal history being at a IV, Collington "has never been in custody for any substantial period of time," having only been imprisoned for seven months before this crime. *Id.* The district court also noted that the criminal history did not reflect that this incident was the first time that this quantity of drugs and guns had been found in Collington's possession. *See id.*

In the present case, Mr. Suggs has not been imprisoned for any substantial period of time prior to incarceration for the acts leading to this conviction. Mr. Suggs has been incarcerated since September 24, 2015. At sentencing, Mr. Suggs will have been incarcerated for six and a half months. Mr. Suggs has been confined without incident since his arraignment. (PSIR ¶ 4).

### b.  Characteristics of the Defendant

Paul Jens Suggs was nineteen years of age when, in September 2015, he committed the offense of interstate communication of threats. At the time of the offense, Mr. Suggs was living in Moscow, Idaho. Mr. Suggs' mother, Heike Suggs, reported that he was raised in a dysfunctional family with a father that abused alcohol. (PSIR ¶ 46). Heike Suggs also reported that she divorced Mr. Suggs' father and that the divorce was tough on Mr. Suggs who was fourteen years old at the time. (PSIR ¶ 46). Mr. Suggs began using marijuana at age fourteen and alcohol at age 15. (PSIR ¶ 57, 59). Mr. Suggs has attended inpatient treatment, and was able to main sobriety for approximately six months between December 2015 and May 2015 – shortly before he committed the instant offense. (PSIR ¶ 57-58).

In the months preceding the offense, Mr. Suggs was enrolled and employed at the University of Idaho. (PSIR ¶ 61, 62).

**SENTENCING MEMORANDUM**
**Page 3 of 11**

In the *2005 Annual Report of the Federal Advisory Committee on Juvenile Justice*, the Committee recognized that "the parts of the brain that govern impulse, judgment, and other characteristics may not reach complete maturity until an individual reaches age 21 or 22." *Id.* at 8.[1] Recently, too, the United States Supreme Court concluded that life sentences for juveniles violate the Eighth Amendment prohibition against cruel and unusual punishment, largely because of the immaturity and greater possibility for change associated with those under eighteen:

> As compared to adults, juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are *"* not as well formed." *Id.,* at 569–570, 125 S.Ct. 1183. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Id.,* at 573, 125 S.Ct. 1183. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id.,* at 569, 125 S.Ct. 1183. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." *Thompson, supra,* at 835, 108 S.Ct. 2687 (plurality opinion).

> No recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles. As petitioner's *amici* point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. See Brief for American Medical Association et al. as *Amici Curiae* 16–24; Brief for American Psychological Association et al. as *Amici Curiae* 22–27. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. *Roper,* 543 U.S., at 570, 125 S.Ct. 1183. It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with

---

[1] The report is available at www.ncjrs.gov/pdffiles1/ojjdp/212757.pdf

**SENTENCING MEMORANDUM**
**Page 4 of 11**

those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed."

*Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 2026-27, 176 L. Ed. 2d 825 (2010), *as modified* (July 6, 2010).

Mr. Suggs was not a juvenile when he committed the instant offense (though he was only nineteen years of age), and the issue of course, is not whether he should be sentenced to life imprisonment. Nonetheless, as recognized by the Federal Advisory Committee on Juvenile Justice, the character and thinking process of even young adults is incomplete and much of what was said in *Graham* has meaning here. Indeed, Mr. Suggs' crime shows a failure to weigh his actions and an impetuous failure to seek a better solution, both traits commonly associated with immaturity.

Mr. Suggs' young age is included in his "history and characteristics," part of the statutorily required consideration in the sentencing determination. *See* 18 U.S.C. §3553(a)(1).

In *Gall v. United States*, the court relied on the youth of the twenty-one year old defendant as one of the reasons justifying a below-guideline sentence:

In summary, the District Judge observed that all of Gall's criminal history, "including the present offense, occurred when he was twenty-one-years old or younger" and appeared "to stem from his addictions to drugs and alcohol." *Id.,* at 122, 123. The District Judge appended a long footnote to his discussion of Gall's immaturity. The footnote includes an excerpt from our opinion in *Roper v. Simmons,* 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that " 'often result in impetuous and ill-considered actions.' " The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote:

**SENTENCING MEMORANDUM**
**Page 5 of 11**

"Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five.... [T]he recent [National Institutes of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant."

*Gall v. United States*, 552 U.S. 38, 57-58, 128 S. Ct. 586, 601, 169 L. Ed. 2d 445 (2007).

Similarly, in *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008), the court affirmed a downward variance based on the defendant's lack of significant criminal history, depression at the time of the offense, the short time period in which the offense took place, lack of repeat offending by the defendant after his arrest, significant self-improvement efforts during the year and a half in which he waited to be prosecuted, and that the defendant was twenty years old when he committed the crime. Mr. Suggs, like the defendant in *Huckins*, lacks significant criminal history, had a diagnosis of depressive disorder, had not had previous offenses similar to the charged offense, and was nineteen years old at the time of his offense. Although he has been incarcerated since September 24, 2015, Mr. Suggs has attended self-improvement meetings such as NA/AA as opportunity permits while incarcerated.

### c.  Nature of the Offense

Mr. Suggs plead guilty to interstate communication of threats. This offense was committed at a time when Mr. Suggs was using drugs and alcohol. In addition, the relevant and non-relevant conduct surrounding the offense occurred within a very short period of time. Mr. Suggs has acknowledged the seriousness of his actions and is extremely remorseful.

**SENTENCING MEMORANDUM**
**Page 6 of 11**

**II.     18 U.S.C. §3553(a)(2): THE NEED FOR SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE; TO AFFORD ADEQUATE DETERRENCE; TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT; AND PROVIDE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.**

### a.  Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

Mr. Suggs has been incarcerated since September 24, 2015. At sentencing, Mr. Suggs will have been incarcerated for six and a half months. Mr. Suggs has been confined without incident since his arraignment. (PSIR ¶ 4). In addition, Mr. Suggs has no convictions for any type of similar offense. A sentence of six months with a term of supervised release for a first-time offender for this offense is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for this offense.

### b.  Need to Afford Adequate Deterrence to Criminal Conduct

If the Court imposes a six-month sentence and a term of supervision, Mr. Suggs will continue to be monitored even after release from custody. Mr. Suggs' twentieth birthday was on March 8, 2016, approximately one month ago. If this Court imposes three years of supervised release, Mr. Suggs will be in his mid-20s before emerging as a free man. That sentence would equate to three and a half years of jail, and supervision, which will necessarily include treatment (and additional jail if any mistakes are made).

It is also important to note that Mr. Suggs has been convicted of a felony offense, a conviction that will be a permanent part of his record. In addition, because Mr. Suggs has been incarcerated for more than six months as of the date of sentencing, he has not been able

**SENTENCING MEMORANDUM**
**Page 7 of 11**

to continue with his degree program at the University of Idaho. Under the circumstances of this case, additional jail time is not needed to drive home the point that he cannot ever engage in the same type of conduct that resulted in this felony conviction – we have reached a point of diminishing return in terms of additional incarceration.

Simply put, a felony conviction and a six-month sentence with a term of supervision is enough to deter Mr. Suggs from any future criminal conduct.

### c.  Need to Protect the Public from Further Crimes of the Defendant

A six-month sentence together with a term of supervision is adequate to protect the public from further crimes of the defendant. This is especially true in light of the additional conditions of supervision recommended by United States Probation. (PSIR ¶ 69-77). It is anticipated that the Court will adopt at a minimum those additional conditions that relate to participation in a program of testing and treatment for drug and alcohol abuse, abstinence from alcohol and non-prescribed drugs, mental health treatment, and monitoring of computer activity. (PSIR ¶ 72, 73, 74, 76).

In *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008), the Court affirmed a downward variance from 120 months in prison to 66 months with 10 years supervised release. The *Grossman* court stated, "while the court accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct, it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom." *Id.* at 597.

**SENTENCING MEMORANDUM**
**Page 8 of 11**

Prior to his incarceration, Mr. Suggs was a resident of Moscow, Idaho. (PSIR ¶ 45). Mr. Suggs' mother, Heike Suggs, lives in Moscow, Idaho. It is anticipated that upon release from incarceration, Mr. Suggs will reside with his mother in Moscow, Idaho. A probation officer for this court is stationed in Moscow, Idaho. Moscow is the county seat for Latah County, Idaho, and home to the Latah County District Court. As a result, there are a number of appropriate drug and alcohol treatment providers, in addition to mental health professionals in Moscow and the immediate vicinity. In addition, Mr. Suggs' mother, Heike Suggs, is employed in Moscow, Idaho and has a very flexible work schedule, such that she is able (and willing) to provide needed support and transportation to appointments.

Similar to the court's reasoning in *Grossman*, adequate deterrence can be accomplished through extensive counseling and treatment together with a period of supervised release, which itself will contain substantial limitations on Mr. Suggs' freedom.

### d. Need to Provide Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

As noted in section (c) above, it is anticipated that Mr. Suggs will reside with his mother in Moscow, Idaho upon release from incarceration. Mr. Suggs was enrolled at the University of Idaho in Moscow, Idaho prior to incarceration. The University of Idaho is an appropriate place for Mr. Suggs to continue his education. In addition, there are a number of appropriate treatment professionals located in Moscow, Idaho. Mr. Suggs can obtain his required care in the Moscow area in an efficient and effective manner in the Moscow, Idaho area without the need for further incarceration.

**SENTENCING MEMORANDUM**
**Page 9 of 11**

**CONCLUSION**

Mr. Suggs was nineteen years old when he committed this offense. It is apparent that drugs and alcohol contributed to the offense. Mr. Suggs has no adult or significant criminal history. Mr. Suggs' age, his lack of similar criminal history, and the circumstances surrounding his offense suggest that because he is a young man he has a great capacity for change, which suggests a greatly reduced possibility of recidivism.

Mr. Suggs' calculated guideline range is that of fifteen to twenty-one months. His current offense level is the first level in Zone D. Mr. Suggs is respectfully requesting this court grant a downward departure and sentence him to six months incarceration with a term of supervised release. Even if the court sentenced him to a sentence in Zone C of the Sentencing Table (a drop of one or two offense levels), that would provide several options to the Court, including a sentence of probation that substituted home detention for any remaining period of imprisonment. Such a sentence would allow Mr. Suggs to substitute a day of home detention for one day of imprisonment. It is worth noting that the Sentencing Commission considers home detention to be equal in terms of seriousness to incarceration since a day for day credit is provided. As noted previously, the *Grossman* court recognized that supervised release provides significant limitations on a defendant. *See* 513 F.3d at 597.

Such a sentence would allow Mr. Suggs obtain any needed treatment, obtain employment, and continue with his college education in the local setting. In addition, such a sentence would be "sufficient, but not greater than necessary" to comply with the goals of sentencing. 18 U.S.C § 3553(a).

**SENTENCING MEMORANDUM**
**Page 10 of 11**

By imposing a sentence of six months incarceration with a term of supervised release, the court does not lose the ability to adequately supervise Mr. Suggs or provide additional consequences. If Mr. Suggs steps out of line – even briefly – or otherwise fails to deliver on his promise to reform and maintain law-abiding behavior, the Court can punish Mr. Suggs in the supervised release setting. Mr. Suggs respectfully this Court to impose such a sentence.

DATED: March 28, 2016

MARK T. MONSON
Mosman Law Offices
Idaho State Bar No. 6165
PO Box 8456
Moscow, ID 83843
Tel. (208) 882-0588 Ext. 101
Facsimile: (208) 882-0589

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Traci Whelan, Assistant United States Attorney, 6450 N. Mineral Drive, Coeur d'Alene, ID 83815 by electronic delivery this 28th day of March, 2015. In addition I electronically filed the foregoing with the District Court Clerk using the CM/ECF System, which will send a filing notification to Traci Whelan.

MARK T. MONSON

**SENTENCING MEMORANDUM**
**Page 11 of 11**